**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CR. No. 08-0035 S** |
| | ) | |
| **ELVIS FORTES** | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS STATEMENTS**

The United States of America respectfully urges the Court to deny the defendant's motion to suppress. Despite the assertions contained within the defense motion, the evidence will show that the defendant was in fact advised of his rights at the scene. Furthermore, the few statements made by the defendant were spontaneous, voluntary statements and thus admissible at trial in this case.

**FACTS**

On February 12, 2008 members of the Pawtucket Police Special Squad Unit executed a search warrant for the second floor apartment at 10 Whipple Street in Pawtucket. Prior to entering the apartment, members of the Special Squad observed the defendant walking his pit bull on Whipple Street and requested that Officers Duhamel and Altongy of the Pawtucket Police stop and detain the defendant. As Officers Duhamel and Altongy approached the defendant, he began to walk in a hurried manner towards 10 Whipple Street. He stopped, faced the officers, and held them at bay with the pit bull. The officers instructed the defendant secure the dog, but he ignored their commands. As Officer Duhamel moved into a position to block the defendant's path into his house, the defendant released his pit bull, saying "Talk to

this." Officer Duhamel was bitten on his right hand before the dog was subdued by officers and the defendant obeyed commands to secure the dog with its leash to a nearby fence. The officers conducted a pat-down search of the defendant. The defendant had a cellular telephone and $1,201 on his person.

After the arrival of Animal Control Officers, the defendant told officers, "There is another dog inside and it is way meaner than that one." He also told officers that his cousin, Emmanuel Oliveira, was inside the apartment with the other pit bull. The defendant said that both dogs were his. The defendant was placed in the back of a patrol car where Detective John Joseph advised the defendant of his Miranda rights. The defendant was subsequently transported to Police Headquarters.

The officers searched the defendant's apartment finding approximately 125 grams of crack cocaine and several items used in narcotics trafficking, including a digital scale, packaging material, inositol, and acetone. While they were searching his apartment, the defendant's girlfriend, Monica Mendes, arrived on the scene. She admitted that she lived in the apartment with the defendant.

At the station, Detectives Joseph and Slattery attempted to interview the defendant while he was in the cell block. They asked him whether or not he wished to cooperate and provide a statement. The defendant refused to provide a statement, and stated, "the other two had nothing to do with nothing. You guys did your job, you're good, I'm all set." These statements, the defendant claims, are inadmissible violations of his Fifth Amendment right against self-incrimination.

## ARGUMENT

### I. DEFENDANT'S STATEMENTS TO DETECTIVES SLATTERY AND JOSEPH AT POLICE HEADQUARTERS CONSTITUTED AN IMPLIED WAIVER OF HIS FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION

The defendant's comments to Detectives Slattery and Joseph "that the other two had nothing to do with nothing," and "You guys did your job, you're good, I'm all set," were the result of an implied waiver of his Fifth Amendment right against self-incrimination. As noted in the facts, the defendant was advised of his constitutional rights before being transported to the police station. Therefore, his claim that he was never advised of his rights is contradicted by Detective Joseph.

Given that Detective Joseph advised the defendant of his constitutional rights, the issue becomes whether the defendant voluntarily waived those rights. Proving that the defendant waived his Fifth Amendment rights is the government's burden, and is decided by a preponderance of the evidence. See United States v. Rojas-Tapia, 446 F.3d 1, 4 (1st Cir. 2006). For the waiver to be valid the "'totality of the circumstances'" must reveal "both an uncoerced choice and the requisite level of comprehension" to waive the right. See Moran v. Burbine, 475 U.S. 412, 421 (1986). Although the defendant did not expressly waive his right to remain silent before he made the comments at issue, a valid waiver may be implied and need not consist of an express statement. See North Carolina v. Butler, 441 U.S. 369, 373-74 (1979); Bui v. DiPaolo, 170 F.3d 232, 240 (1st Cir. 1999).

In Bui, Judge Selya describes precisely the situation presented in this case

> [T]here are certain types of cases in which courts routinely conclude that a defendant who has professed an understanding of his right to remain silent has waived that right. For example, a defendant will be held to have effected a waiver when, after receiving warnings and asserting (equivocally or unequivocally) a right to remain silent, he spontaneously recommences the dialogue with his interviewers.

Bui, 170 F.3d at 240; see also United States v. Smith, 218 F.3d 777, 781 (7th Cir. 2000) (even when the defendant has refused to sign a waiver form, later conduct may nevertheless imply that he intends a waiver).

In this case, the defendant was advised of his rights before he was transported to the police station. When officers attempted to interview the defendant at the station, he indicated that he was not interested in making a statement and he said, "that the other two had nothing to do with nothing," and "You guys did your job, you're good, I'm all set." By his refusal to give a statement, the defendant unequivocally demonstrated two things: (1) that he clearly understood his rights; and (2) that his subsequent statements were voluntarily made as a result of a valid waiver.

The defendant's familiarity with the criminal justice system also weighs in favor of finding a voluntary waiver. See Rojas-Tapia, 446 F.3d at 8. The defendant has been charged with crimes on five previous occasions, including robbery and burglary with assault. The events surrounding this case are hardly the defendant's first encounter with law enforcement procedure. His familiarity with the process suggests that he had

the requisite knowledge to voluntarily waive his rights.

A common sense examination of the defendant's comments to Detectives Slattery and Joseph at Police Headquarters demonstrates a shrewd attempt to exculpate his friend and girlfriend without directly implicating himself. Having affected a proper waiver, the defendant cannot now cloak himself in the Fifth Amendment to disavow responsibility for the statements that he fully intended the police to hear and consider in the processing of the case.

The spontaneity of the defendant's statements to Detectives Slattery and Joseph is further evidence of the voluntariness of the statements. While it is true that Detectives Slattery and Joseph asked the defendant if he wanted to cooperate and consent to an interview, they did not make any inquiries that would elicit his additional statements. While refusing to give a statement, the defendant made the comments at issue volunteering that the "other two" were not involved and that "you guys did your job, you're good, I'm all set." The defendant did not make any further statements to the detectives.

In fact, the circumstances under which the defendant made the statements at issue cannot not even be considered an interrogation. Interrogation is defined as "express questioning or its functional equivalent." Rhode Island v. Innis, 446 U.S. 291, 300-301 (1980). Put another way, an interrogation has occurred whenever the police have acted in ways or asked questions they "should know are reasonably likely to elicit

an incriminating response." Id. at 301. But while interrogation need not be explicit, it "must reflect a measure of compulsion above and beyond that inherent in custody itself." Id. at 300. "'Any statement made freely and voluntarily without any compelling influence, is of course, admissible in evidence.'" United States v. McLean, 409 F.3d 492, 498 (1st Cir. 2005) (quoting United States v. Lopez, 380 F.3d 538, 545 (1st Cir. 2004)); accord United States v. Sherwood, 98 F.3d 402, 409 (9th Cir. 1996) ("'Spontaneous' or 'volunteered' confessions of a suspect in custody are admissible despite the absence of a prior Miranda warning.").

Though the defendant was in custody, he was not subjected to interrogation or its functional equivalent. In fact, a defendant may be in custody, subjected to prior police questioning which has ceased, and then proceed to volunteer a statement without involving a Miranda waiver analysis, so long as the statement was not the product of interrogation. See United States v. Lopez, 380 F.3d 538, 545-46 (1st Cir. 2004) (deciding statements not a product of interrogation when a defendant who had earlier been interrogated by the police, made statements in presence of police after interrogation had stopped in response to a passing remark that they had discovered evidence); United States v. Genao, 281 F.3d 305, 310-11 (1st Cir. 2002) (defendant's brief, post-arrest comments made after officer stated, "we've got a problem here," admissible because defendant's statements were not the product of interrogation); United States v. Conley, 156 F.3d 78, 83 (1st Cir. 1998) (spontaneous utterance made after the invocation of the right to counsel is admissible); United States v. Shea, 150 F.3d 44, 47-48 (1st Cir.

1998) (overruled on other grounds) (statements and questions made after the defendant's arrest admissible despite no Miranda warnings).

## II. DEFENDANT'S STATEMENTS TO OFFICERS CONCERNING HIS PIT BULLS AT 10 WHIPPLE STREET ARE ADMISSIBLE BECAUSE THEY WERE VOLUNTARY

While it is not clear whether the defendant is challenging the admissibility of the statements he made at 10 Whipple Street, to the extent his motion may constitute such a challenge, the defendant's efforts to suppress the statements he made to officers on the scene should likewise be denied. Although the defendant had not been advised of his rights when he made his comments regarding the pitbull he set loose on Officer Duhamel and the one in his apartment, his statements were not the product of custodial interrogation. Thus, they are not subject to the Miranda protections.

Miranda warnings are necessary whenever a person is subjected to "custodial interrogation." United States v. Fernandez-Ventura, 85 F.3d 708, 710 (1st Cir. 1996). To determine whether Miranda rights are required, a court must inquire both as to whether the defendant was in custody and whether he was interrogated. Id. At the time he made his statements concerning the pit bulls to police, the defendant was subject to neither.

Custody is defined as "a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." Id. (quoting Thompson v. Keohane, 116 S. Ct. 457, 465 (1995)). Additional factors relevant to determining custody include

"'whether the suspect was questioned in familiar . . . surroundings, the number of law enforcement officers present at the scene, the degree of physical restraint . . . and the duration and character of the interrogation.'" Id. at 711. When the defendant initially set his dog upon officers, he was clearly not under any kind of physical restraint, or restricted in movement comparable to that of a formal arrest, and he was in familiar surroundings. Even when he made his later comment about the second dog in his apartment, there is no indication that he was subjected to a "restraint on freedom of movement of the degree associated with a formal arrest." Id. at 710. Indeed, officers had allowed the defendant the physical freedom to secure his dog himself to a nearby fence. The detention did not become custodial simply because the defendant was not free to walk away from officers. See United States v. Fernandez-Ventura, 132 F.3d 844, 847-48 (1st Cir. 1998) (defendant, who was not advised of his rights while being questioned for one hour and twenty minutes by armed customs officials, was not in custody and therefore his statements were admissible).

Ultimately the issue of custody is moot, because the defendant cannot point to any actions by the police that were likely to elicit an incriminating response from him – something that would be the functional equivalent of interrogation. See Innis, 446 U.S. at 300-301. He can show nothing that combined with custody, would have coerced him into making the statements. Statements in response to informational inquiries made incident to arrest or for officer and/or public safety are admissible even in the absence of Miranda warnings. See Genao, 281 F.3d at 311 & n.5; Conley, 156 F.3d at 84; Shea,

150 F.3d at 48; see also McLean, 409 F.3d at 498-499 (statements, made in response to routine police booking questions, going beyond the substance of the booking questions asked, and before defendant was apprised of Miranda rights, are admissible); United States v. Morris, 977 F.2d 677, 682-83 (1st Cir. 1992) (statements made to police during search of house, prior to Miranda warning were uncoerced and admissible); Sherwood, 98 F.3d at 409 (confession made in custody was admissible, despite the absence of Miranda warning); United States v. Mauleon, 5 Fed. Appx. 782 (9th Cir. 2001) (unpublished) (defendant's inculpatory statements regarding drug offense made to police officers who were questioning the defendant about a murder that he witnessed were admissible, because they were not the result of questioning regarding the drug offense). The defendant was subjected to neither custody nor interrogation at the time he made his statements on the scene. Therefore, those statements are admissible even though made before he was advised of his rights.

## CONCLUSION

Based upon the foregoing, the defendant's motion to suppress should be denied and his statements made to police deemed admissible.

Respectfully submitted,

UNITED STATES OF AMERICA,

By its Attorneys,

ROBERT C. CORRENTE
United States Attorney

/s/ SANDRA R. BECKNER
Assistant United States Attorney
New York Bar
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel: (401) 709-5000
Fax: (401) 709-5001
Sandra.beckner@usdoj.gov

**CERTIFICATION**

On July 25, 2008, I caused the within "Government's Response in Opposition to Defendant's Motion to Suppress" to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

Mr. Kevin Fitzgerald, Esquire
Assistant Federal Public Defender
10 Weybosset Street, Suite 300
Providence, RI 02903
Tel: (401) 528-4281
Edward Roy@fd.org

/s/ SANDRA R. BECKNER
Assistant United States Attorney
New York Bar
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel: (401) 709-5000
Fax: (401) 709-5001
Sandra.beckner@usdoj.gov