IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | Cr. No. 08-35S |
| | ) | |
| ELVIS FORTES | ) | |

GOVERNMENT'S TRIAL MEMORANDUM

I. The Indictment and Elements

The defendant, ELVIS FORTES, is charged in a single count indictment with possessing with the intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).

The elements of that count are as follows:

First, that defendant on or about February 12, possessed 50 grams or more of cocaine base, either actually or constructively;

Second, that he did so with a specific intent to distribute the cocaine base over which he had actual or constructive possession; and,

Third, that he did so knowingly and intentionally.

See Pattern Criminal Jury Instructions for the District Courts of the First Circuit, § 4.22.

II. Factual Summary

The government expects the evidence in this case to show the following:

On February 12, 2008 members of the Pawtucket Police Special Squad Unit

executed a search warrant for the second floor apartment at 10 Whipple Street in Pawtucket. Prior to entering the apartment, members of the Special Squad observed the defendant walking his pit bull on Whipple Street and requested that Officers Duhamel and Altongy of the Pawtucket Police stop and detain the defendant. As Officers Duhamel and Altongy approached the defendant, he began to walk in a hurried manner towards 10 Whipple Street. He stopped, faced the officers, and held them at bay with the pit bull. The officers instructed the defendant to secure the dog, but he ignored their commands. As Officer Duhamel moved into a position to block the defendant's path into his house, the defendant released his pit bull, saying "Talk to this." Officer Duhamel was bitten on his right hand before the dog was subdued by officers and the defendant obeyed commands to secure the dog with its leash to a nearby fence. The officers conducted a pat-down search of the defendant. The defendant had a cellular telephone and $1,201 on his person.

After the arrival of Animal Control Officers, the defendant told officers, "There is another dog inside and it is way meaner than that one." He also told officers that his cousin, Emmanuel Oliveira, was inside the apartment with the other pit bull. The defendant said that both dogs were his. The defendant was placed in the back of a patrol car where Detective John Joseph advised the defendant of his Miranda rights. The defendant was subsequently transported to Police Headquarters.

The officers searched the defendant's apartment finding approximately 95 grams of crack cocaine and several items used in narcotics trafficking, including a digital scale,

packaging material, inositol, and acetone. While they were searching his apartment, the defendant's girlfriend, Monica Mendes, arrived on the scene. She admitted that she lived in the apartment with the defendant.

At the station, Detectives Joseph and Slattery attempted to interview the defendant while he was in the cell block. They asked him whether or not he wished to cooperate and provide a statement. The defendant refused to provide a statement, and stated, "the other two had nothing to do with nothing. You guys did your job, you're good, I'm all set." These statements, the defendant claims, are inadmissible violations of his Fifth Amendment right against self-incrimination.

## III. Legal Issues

### A. Fed. R. Evid. 404(b)

The government filed a separate notice pursuant to Fed. R. Evid. 404(b).

### B. Expert Testimony

The government intends to call Mr. Michael Liberto, a forensic scientist with the Rhode Island Forensic Science Laboratory to testify regarding his analysis of the drug exhibits seized.

The government may also call Detective Jeffrey Allen, with the Bureau of Criminal Identification, who analyzed the submitted exhibits for fingerprints, although he was unable to enhance any fingerprints with evidentiary value. Detective Allen may testify to the results of his analysis, and the conditions that my impede the recovery of

fingerprints.

C. Opinion Testimony

The government will also offer the testimony of law enforcement personnel, in particular Detective John Joseph, Detective Paul Sylvestre, Sergeant Michael Slattery, Detective Peter Duhamel, and Detective Dan Dolan, who may testify based upon their extensive experience and training in the field of drug trafficking, to the methods and operations unique to the narcotics business. The government may elicit testimony about the techniques used by law enforcement in a narcotics investigation.

Based upon their extensive training and experience, the detectives may testify to the manner in which cocaine base, "crack," is manufactured, transported, sold and used. The detectives may testify to the price of crack cocaine and what constitutes a distributable quantity of crack cocaine. The agents will testify to the retail and wholesale value of 95 grams of crack cocaine, and that the quantity of narcotics seized is consistent with distribution.

The detectives may testify that baggies, acetone, inositol, a scale, baking soda, a strainer, and cellular telephones are all "tools of the trade" in the drug business. The detectives will explain how each "tool" is used by narcotics traffickers. The detectives may testify to the features of a drug house, and that in their experience high foot traffic in an area is consistent with narcotics trafficking.

The First Circuit has consistently upheld the introduction of this type of agent testimony. See United States v. Maher, 454 F.3d 13, 23-24 (1st Cir. 2006) (upholding the

admission of agent testimony regarding the meaning of words and numbers used in "Post It" notes seized from the defendant's vehicle, and testimony regarding the typical packaging of narcotics); United States v. Ayala-Pizarro, 407 F.3d 25, 28-29 (1st Cir. 2005) (affirming the district court's decision to admit agent testimony regarding the packaging of narcotics and how drug points operate); United States v. Reynoso, 336 F.3d 46, 49 (1st Cir. 2003) (opinion that drug quantity was consistent with possession with intent to distribute); United States v. Villarman-Oviedo, 325 F.3d 1, 13 (1st Cir. 2003) (agent allowed to testify to meaning of code words); United States v. Rivera-Rosario, 300 F.3d 1, 17 (1st Cir. 2002) (coded drug phrases); United States v. Valle, 72 F.3d 210, 214-15 (1st Cir. 1995).

Experienced investigators may also be "permitted to testify as experts on topics such as the structure of a criminal enterprise, the economics of the drug trade, and the handling of contraband." United States v. Sepulveda, 15 F.3d 1161, 1183-84 (1st Cir. 1993); see United States v. Pinillos-Prieto, 419 F.3d 61, 71-72 (1st Cir. 2005) (allowing agent testimony regarding the dangerous nature of drug organizations and why organizational leaders as well as innocent observers are not present during the actual handoff of narcotics); United States v. Garcia-Morales, 382 F.3d 12, 18-19 (1st Cir. 2004) (agent permitted to testify regarding the structure and operation of a typical drug conspiracy); United States v. DiMarzo, 80 F.3d 656, 659-60 (1st Cir. 1996) (allowing testimony that drug dealers do not take innocent observers to drug deals); United States v. Hensel, 699 F.2d 18, 38 (1st Cir.) (general practices of drug smugglers), cert. denied,

461 U.S. 958 (1983).

Likewise, agents may testify regarding the "tools of the trade" in the drug business. See, e.g., United States v. Alosa, 14 F.3d 693, 696-97 (1st Cir. 1994); United States v. Tejada, 886 F.2d 483, 486-87 (1st Cir. 1989); United States v. Allen, 269 F.3d 842, 846 (7th Cir. 2001) (allowing expert testimony regarding "'tools of the trade'"). In addition to testifying regarding the "tools of the trade," agents have been permitted to testify about the locations in which drug activity occurs. See United States v. Isler, 429 F.3d 19, 26-27 (1st Cir. 2005) (allowing agent testimony about the features of a drug house and that defendant's house was consistent with other drug houses); Ayala-Pizarro, 407 F.3d at 28-29 (allowing testimony regarding how drug points operate).

D. Physical Evidence

Evidence of "tools of the trade" is admissible to prove the existence of a conspiracy as well as intent to distribute. See United States v. McGuire, 389 F.3d 225, 230 (1st Cir. 2004) (judgment vacated on other grounds) ("'in drug trafficking firearms have become 'tools of the trade' and thus are probative of the existence of a drug conspiracy'"); United States v. Ford, 22 F.3d 374, 383 (1st Cir. 1994) (scales, firearms and large sums of cash are probative of an intent to distribute narcotics as they are "tools of the trade"); Alosa, 14 F.3d at 696 (drug ledgers are admissible as "'real evidence'" to prove that a drug business was conducted in a particular location, to prove the existence of a conspiracy, and to prove the dimensions of a conspiracy); United States v. Camilo Montoya, 917 F.2d 680, 682 (1st Cir. 1990).

Furthermore, the identification card seized from the defendant's bedroom at 10 Whipple Street is admissible, non-hearsay evidence proving the defendant's connection to the apartment. See United States v. Serrano, 434 F.3d 1003, 1005 (7th Cir. 2006) (receipts, bills, and other documents are not hearsay when offered as circumstantial evidence linking a defendant to a particular location); United States v. Balthazard, 360 F.3d 309, 318 (1st Cir. 2004) (notes seized from the scene admissible as real evidence of a drug business); United States v. Mazyak, 650 F.2d 788, 792 (5th Cir. 1981) (letter admissible for non-hearsay purpose of linking conspirators to the location and to each other); United States v. Mejias, 552 F.2d 435, 446 (2nd Cir. 1977) (admitting hotel receipt, luggage invoice and business card to prove a link between the defendant the motel in which the drug activity occurred); see also United States v. Paulino, 13 F.3d 20, 24 (1st Cir. 1994) (rent receipt seized from the apartment containing the drugs was admissible as an adoptive admission).

## IV. Requested Voir Dire and Jury Instructions

The government will file its proposed voir dire questions and jury instructions under separate cover.

## V. Witness and Evidence List

The government will submit a witness and evidence list under separate cover prior to the commencement of trial.

VI. Estimated Time of Trial

The government estimates that it will take three days to conduct the trial.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

ROBERT CLARK CORRENTE,
UNITED STATES ATTORNEY

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2008, a copy of the within "Government's Trial Memorandum" was filed electronically and is available for viewing and downloading from the ECF system.

Electronic notification:

Mr. Kevin Fitzgerald
Federal Defender's Office
10 Weybosset Street, Suite 300
Providence, Rhode Island 02903

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj